580 So.2d 489 (1991)
John G., Irma W., and George J. PANZECA
v.
The CITY OF NEW ORLEANS, et al.
No. 90-CA-1248.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1991.
Dan D. Zimmerman, Deputy City Atty., Beverly Zervigon, Chief Deputy City Atty., William Aaron, Jr., Acting City Atty., New Orleans, for defendants-appellants.
Moise S. Steeg, Jr., K. Eric Gisleson, Steeg and O'Connor, New Orleans, for plaintiffs-appellees John G., Irma W., George J. Panzeca.
Cecil M. Burglass, Jr., Douglas W. Freese, New Orleans, for intervenors-appellants Capricorn Productions, Inc., Capricorn Investments, Inc., Robert Revere and Bruce Goodbee.
Diana Duvall Cameron, New Orleans, for intervenor-appellant The Vieux Carre Property Owners, Residents and Associates, Inc.
Before KLEES and BYRNES, JJ., and HUFFT, J. Pro Tem.
BYRNES, Judge.
The City of New Orleans and various departments thereof (collectively "the City") appeal a judgment in favor of plaintiffs, John G., Irma W., and George J. Panzeca ("the Panzecas"), maintaining a non-conforming use status of property located at 800 Bourbon Street and ordering the City and all its departments to issue plaintiffs the necessary licenses to operate *490 on a continuing non-conforming basis. Intervenors, Capricorn Productions, Inc., Capricorn Investments, Inc., Robert Revere and Bruce Goodbee (collectively "Capricorn"), as well as The Vieux Carre Property Owners, Residents and Associates, Inc. ("Vieux Carre") also appeal that judgment. We affirm in part and amend in part.
For purposes of this decision, we accept the following findings of fact by the trial judge: The Panzeca family has owned the property located at 800 Bourbon Street for over 50 years. When the City's comprehensive zoning ordinance was enacted, the 800 block of Bourbon Street was zoned residential; however, because the property at 800 Bourbon Street was being used for commercial purposes prior to its being zoned residential, the property acquired non-conforming status allowing commercial operations to continue. For over 50 years, the property was licensed to and legally dispensed alcoholic beverages at all times. In 1986, plaintiffs evicted an undesirable tenant and proceeded to renovate the premises, sought a new lessor or owner, and conducted minimal bar activities to maintain the property's non-conforming use status.
During the time period from 1986-1988, the City issued to plaintiffs the necessary occupational and use licenses. Additionally, plaintiffs paid and the City accepted sales taxes for the 1986-1988 period.
Plaintiffs located a purchaser for the property and entered into an agreement with Mr. Nick Krysalka to purchase the property for $1,000,000, provided that Krysalka would be able to operate the property as an alcoholic beverage outlet. Krysalka's application for the necessary permits and the occupational license were denied by the City through the Department of Finance (Bureau of Revenue). However, the plans and specifications for Krysalka's intended use of the building were approved by the Vieux Carre Commission. At the time that Krysalka's application was denied, plaintiffs' property was still a lawful alcoholic beverage outlet. The Department of Finance (Bureau of Revenue) denied Krysalka's application based on the decision that the property's non-conforming use had been lost because the property had been vacant and had remained vacant for six consecutive months. Subsequently, plaintiffs sought a zoning change from the City Planning Commission. The New Orleans City Council rejected the City Planning Commission's negative recommendation but it did not allow the requested zoning change. The plaintiffs attempted to obtain the necessary 1989 permits for the property but their application was rejected. The Panzecas appealed the denial of the alcoholic beverage permit to the City's Alcoholic Beverage Control Board pursuant to City Code Sec. 5-44.1. A hearing was held before the ABC Board on February 14, 1989.
On February 16, 1989, plaintiffs filed suit against the City of New Orleans, through its Mayor, Sidney J. Barthelemy, and three departments of the City of New Orleans: the Department of Finance, Bureau of Revenue; the City Planning Commission; and the Alcoholic Beverage Control Board in Civil District Court, seeking a writ of mandamus ordering the City to recognize plaintiffs' non-conforming status on the property and to direct the City to issue license and permits necessary to maintain that status and operate plaintiffs' business. Thereafter, the parties agreed to convert the proceedings for mandamus to ordinary proceedings and plaintiffs added certain named public officials by amended petition. Capricorn Investments, who owns and operates the Bourbon Pub, an alcoholic beverage establishment located at 801 Bourbon Street, intervened.
At a hearing in the trial court on April 11, 1989, the parties agreed to refer the matter to the Board of Zoning Adjustments ("BZA"), which issued a ruling determining that the Panzecas' property had lost its non-conforming use. Additionally, the Alcoholic Beverage Control Board ("ABC Board") denied the Panzecas' alcoholic beverage permit application. Thereafter, the trial court rendered its judgment in plaintiffs' favor and the City as well as Capricorn appealed. In addition, the Vieux Carre intervened and appealed that judgment.
*491 On appeal, the City contends that the trial court erred in: finding that the property had maintained its non-conforming status; finding that issuance of occupational licenses to the Panzecas constituted an acknowledgment of lawful commercial use of their property; and in rejecting the decision by the Board of Zoning Adjustments. Intervenor, Capricorn, asserts that the trial court erred in: (1) holding that the Panzecas maintained a non-conforming use upon the property located at 800 Bourbon; (2) finding that the BZA's ruling was arbitrary and capricious; (3) reviewing the BZA's ruling when the Panzecas failed to seek district court review; and (4) ruling in the Panzecas' favor when they are not entitled because of the dilapidated condition of the building located at 800 Bourbon Street. Intervenor, the Vieux Carre, also claims that the trial court erred in ordering the City to issue permits necessary to operate the business.
The burden of proving termination of a non-conforming use status by abandonment or discontinuance is on the party urging termination of that status. City of New Orleans v. Elms, 566 So.2d 626 (La.1990), rehearing denied (Sept. 1990). A zoning ordinance, being in derogation of rights of private ownership must be construed, when subject to more than one interpretation, according to the interpretation which allows the least restricted use of property. City of Kenner v. Normal Life of Louisiana, Inc., 483 So.2d 903 (La.1986).
The crucial issue in the present case is whether the City is barred by prescription from preventing the Panzecas from maintaining its non-conforming use of the property. Prescription begins to run when the City first has written notice of a use violation under LSA-R.S. 9:5625(B).
The City contends that plaintiffs failed to meet the standards for maintaining a non-conforming use and such was extinguished because the property became and remained vacant for six consecutive months in 1986. The City notes that Section 5-45.1 of the City Code prohibits the issuance of ABC permits in any residential district of the City unless the premises had been so licensed prior to the adoption of Section 5-45.1 in 1958 and so long as such "grandfathered" locations "are continuously operated as such with no lapse in the operation for a period in excess of six (6) months." This is the same standard for extinguishment of non-conforming uses which exists in Article 12 of the City's Comprehensive Zoning Ordinance:
Section 2. Discontinuance of non-conforming uses, lands and buildings. No building or portion thereof or land used in whole or in part for non-conforming purposes ... which hereafter becomes and remains vacant for a continuous period of six (6) calendar months shall again be used except in conformity with the regulations of the district in which such building or land is situated....
Art. 12, Sec. 6 of the Zoning Code states:
Neither the intention of the owner nor that of anybody else to use a building or lot or part of either for any non-conforming use, nor the fact that said building or lot or part of either may have been used by a makeshift or pretended non-conforming use shall be taken into consideration in interpreting and construing the word `vacant' in this section....
Plaintiffs assert that any violation extinguishing the non-conforming use began in 1986; that the City had knowledge of the violations, and that failure to enforce the zoning ordinance within two years of the City's first knowledge of the violations bars the present action under LSA-R.S. 9:5625(A) and entitles their property to non-conforming use status under LSA-R.S. 9:5625(B). Section A of that statute provides in pertinent part:
[W]ith reference to violations of use regulations all such actions ... must be brought within two years from the date the parish, municipality and their properly authorized instrumentality or agency if such agency has been designated, first had been actually notified in writing of such violation.
Section B provides that after the two year prescription has accrued, the particular property thereafter "shall enjoy the same *492 legal status as land uses ... made non-conforming by" other provisions of the zoning ordinance. See City of New Orleans v. Elms, 566 So.2d at 629.
In City of New Orleans v. Elms, id., the Louisiana Supreme Court found that the City was barred by prescription from enjoining the owners' use of their property located in a multiple family residential district for wedding receptions, private parties and public tours. The Supreme Court held that the knowledge of off-duty police officers could be imputed to the Director of Safety and Permits where the prescriptive period at the time of the initial violation ran from the date that the municipality first had any knowledge of the violation under LSA-R.S. 9:5625 prior to the 1972 amendment requiring actual notice in writing of a violation. In Dudenheffer v. City of New Orleans Dept. of Safety and Permits, 482 So.2d 175 (La.App. 4th Cir.1986), the City was held to have actual knowledge of commercial use of property in violation of the zoning ordinance because the property owner summoned the City to his property to upgrade the electrical service for a seafood wholesale business and made written applications to the Department of Safety and Permits stating that circuits were being added for a welding machine, refrigerated truck and ice machine. In the City of New Orleans v. Kirzner, 464 So.2d 864 (La.App. 4th Cir.1985), writ denied, 466 So.2d 1303 (La.1985), the homeowners' exception of prescription was maintained on the basis of the City's knowledge of a use violation based on the fact that the City licensed the homeowners' candy and snack peddling business at a business address which was the homeowners' residence.
It is undisputed that from December 1986 through December 1988 under the name of the Temporary Bar, the plaintiffs as owners possessed the necessary alcoholic beverage licenses and occupational licenses. They also paid and reported sales taxes indicating a commercial operation during those two years.
Gary Lopinto, an employee of the Orleans Parish Sanitary Services, division of the State Health Department, testified at the Board of Zoning Adjustments hearing on May 22, 1989. He related that he performed routine food and beverage inspections to check for compliance with the Health Code. He provided written documentation dated December 18, 1986, of his inspection of the Temporary Bar performed on December 12, 1986. Lopinto provided a Notice of Violation sheet which included Item 27, indicating no hot or cold running water in the bar or bathroom. In addition, the City provided copies of the Department of Health Human Resources Notice of Violations of December 18, 1986, reports, as well as receipts and permits for the Temporary Bar for the record in the trial court. The City received written minimal tax returns initially in December, 1986. The written documents first put the City on notice that the property violated its non-conforming use status by intermittent operations. The City did not take any action after having actual knowledge of the violations and issued alcoholic beverage and occupational licenses to the plaintiffs through December, 1988. Over two years later, by certified letter of December 30, 1988, the Department of Finance, Bureau of Revenue directly notified the Panzecas of the denial of the alcoholic beverage permit for the Temporary Bar.
Any prior notice of loss of non-conforming use to Krysalka was not proper notice to the Panzecas. Notice by mail or other means as certain to insure actual notice is a minimum constitutional pre-condition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable. Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). A tax sale was null and void where the City failed to notify the taxpayer of overdue taxes when the Sheriff had in his files the previous year's tax bill with a requested change of address. Drury v. Watkins, 546 So.2d 1280 (La.App. 1st Cir. 1989), writ denied, 551 So.2d 1323 (La. 1989).
Capricorn contends that the Panzecas failed to submit a verified petition, a statutory prerequisite to district court review of the BZA hearing. During proceedings held *493 in civil district court on April 11, 1990, the trial judge determined that the Panzecas were entitled to an adversary hearing before the BZA because previously Krysalka was the party given a hearing on his application. Counsel for the City agreed to waive his right to claim the 45-day rule, noting that the rule was not prescribed by law. The trial court stayed the proceedings in civil court on the parties' consent to a hearing before the BZA. Because suit was pending in civil district court, it was unnecessary for plaintiffs to file a petition for review of the BZA ruling.
We conclude that the two year prescription period has accrued from the time of the initial written notice to the City in the middle of December, 1986 through December 30, 1988, when the Panzecas were directly notified of the denial of the alcoholic beverage permit. Therefore, the plaintiffs' property is entitled to retain its non-conforming use status under LSA-R.S. 9:5625(B). However, we note that the trial court's order for the issuance of necessary licenses for the plaintiffs to operate the premises located at 800 Bourbon Street on a continuing and non-conforming basis does not encompass licenses based on health and building code standards separate from the non-conforming use status.
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed against appellants.
AFFIRMED.