| xBARRY, Judge.
The City of New Orleans’ petition for a preliminary injunction as to an alleged zoning violation was dismissed based on exceptions of prescription.
On November 15, 1991 the City filed for a preliminary injunction to stop the defendants, Mr. and Mrs. Chester Coles (owners of 705 Burgundy), Robert Shirer (listed as a principal in St. Peter House) [1], Brent Kovach (manager of St. Peter House) and St. Peter, Inc. (owner of St. Peter House), from renting rooms at 705 and 709 Burgundy Street for transient occupancy (less than sixty days) in violation of the Comprehensive Zoning Ordinance (CZO Art. 5, § 18.2 and Art. 12, § 5). The two multiple family dwellings were zoned VCR-1 (Vieux Carre residential).
The City submitted the affidavit of Stephen Hand, the Director of the Department of Safety and Permits [Department], who declared that St. Peter, Inc. caused, allowed and/or permitted the expansion of a nonconforming use by allowing 705 and 709 Burgundy to be utilized as part of St. Peter House (a |2guest house used for transient occupation). As of November 12, 1991 St. Peter House had not ceased the illegal practice. The City submitted the affidavit of Johnny Odom, the Department’s Senior Building Inspector, who stated that his first inspection in connection with 705-709 Burgundy and 1005 St. Peter was on October 31, 1989 because of a roofing permit, not due to a question of the property’s use. He spoke to the roofing contractor and did not gain access to 705-709 Burgundy Street. Mr. Odom stated he received a use complaint on November 27, 1989, investigated, and that date was “the first time he knew that the Guest House had expanded into 705 Burgundy Street.”
*476 The City also submitted the affidavit of Paul May, Zoning Administrator, attesting to the correctness of the attached documents. Several documents pertained to 705 and 709 Burgundy: May’s September 18, 1990 file notation relating to his September 10, 1990 inspection during which a CZO violation was found; May’s September 18, 1990 letters to Kovach (705 Burgundy) and Coles (709 Burgundy) notifying them of the violations; May’s November 12, 1991 interoffice memo relating to his reinspection on that date which evidenced continuing violations; and May’s November 13, 1991 request for civil action as to both. Also attached were documents relating only to 705 Burgundy: a November 16, 1989 interoffice memorandum to the Department from the Director of the Vieux Carre Commission referring to “several complaints that 705 Burgundy is now an illegal extension of the St. Peter Guest House”; a Department complaint slip dated November 27, 1989; Senior Building Inspector Johnny Odom’s November 27,1989 handwritten inspection report finding a violation; a Department letter to Kovach/Shirer noting the violation on December 7, 1989; Kovach’s December 12, 1989 letter in response explaining |3that the dwelling consisted of six apartments; and Odom’s January 2, 1989 [error-1990][2] field inspection report and a Department letter in response to Kovach’s letter dated January 8, 1989 [error — 1990],
The defendants filed exceptions of prescription. Brent Kovach also filed an exception of no cause of action. Brent Kovach’s no cause of action exception was maintained by consent and the trial court maintained the exceptions of prescription.
The City argues on appeal that it did not receive notice of the use violation at 705-709 Burgundy Street prior to October 31, 1989.
Under La.R.S. 9:5625A an action involving a violation of use regulations must be brought “within two years from the date the parish, municipality and their properly authorized instrumentality or agency if such agency has been designated, first had been actually notified in writing of such violation.” The party pleading prescription in a zoning enforcement case has the burden of proving that prescription accrued. City of New Orleans v. Elms, 566 So.2d 626 (La.1990); Parish of Jefferson v. Jacobs, ‘ 623 So.2d 1371 (La.App. 5th Cir.1993).
The defendants had the burden of proving that the City had actual written notice of the zoning violation. The defendants argued that St. Peter House, a guest house since 1987 (a legal non-conforming use), exists under a single roof and attic which covers improvements on the northeast comer of St. Peter and Burgundy Streets. There is a single, continuous balcony. The guest house sign is displayed on the corner of the balcony. Although there is a single Uroof and balcony, multiple municipal numbers have been assigned to the improvements: 1005 St. Peter; 701-703 Burgundy; 705 Burgundy; and 709 Burgundy Street. The property at 709 Burgundy Street is owned by Dr. and Mrs. Coles; the other properties are owned by St. Peter Inc.
The defendants submitted the October 26, 1989 applications for permits to the Vieux Carre Commission and the Department. Mr. Chamberlain, the roofing contractor, indicated that he was to remove shingles, replace felt and reinstall the shingles on the common roof covering St. Peter House, which is depicted in two photographs attached to his affidavit. Although the application listed 1005 St. Peter St., in his affidavit Mr. Chamberlain stated that he did not specify a particular address; someone at the Department added the street address. Mr. Chamberlain said the single roof could only be accessed through 705 Burgundy by climbing a collapsing stair to the common attic and exiting through a scupper to the roof. His application showed the zoning to be VCR-1 and the bounding streets to be Burgundy, North Rampart and Orleans. His October 27, 1989 building permit from the Department for 1005 St. Peter Street listed the same three bounding streets. Mr. Chamber *477 lain posted the permit by placing it in a ■window near the entrance to 705 Burgundy Street. Also submitted by defendants were the inspection record which shows the old roof was being removed on October 31, 1989 and the work was 75 to 80 percent complete on November 27, 1989. A November 16, 1989 interoffice memorandum referenced “several complaints” received by the Vieux Carre Commission relating to the alleged violation at 705 Burgundy Street.
Mr. Kovach, president of St. Peter House, declared in his affidavit that he met with Inspector Johnny Odom on October 31, 1989 for Odom’s initial |sinspection of the roofing project. Mr. Odom inquired about the properties at 705 and 709 Burgundy Street because “the roof in question (and the attic under the roof) was common to the entire St. Peter House operation.” Mr. Odom also noted that carpeting was being removed from 705 Burgundy. Mr. Kovach told Mr. Odom that the units of 705 and 709 Burgundy were part of the St. Peter House operation. According to Mr. Kovach access to the roof was through 705 Burgundy and Mr. Odom entered that property as part of his October 31, 1989 inspection.
The defendants also submitted the deposition of Mr. Odom who testified that he made the initial inspection with the roofing contractor on October 31, 1989 because he had “received a permit for roof work on the St. Peter Guest House.” He identified the written record of that inspection which stated that the old roof was being removed on October 31, 1989. He said he did not go on the roof because the old one had not been removed. He did not remember where the permit was posted. On November 27, 1989 Mr. Odom went to 1005 St. Peter Street and had to access the roof at 705 Burgundy Street. Mr. Odom noted that he also had a use complaint relating to the 705 address at that time. He identified the written record which indicated that 75 to 80 percent of the job had been completed at that point. Although Mr. Odom stated it was customary to make a final inspection upon completion of the work, he never returned to that job site. He testified that all of the buildings share a common attic and roof and a continuous balcony was around the buildings. Mr. Odom conceded that technically there should have been three permits to do the roof work, one for each building, but the work was being done properly and he [ (¡“didn’t see why make a big issue out of it.” He denied meeting with Mr. Kovach in October or November, 1989.
Mr. Odom stated that during an inspection he checked not only for compliance with the work permits, but also for zoning violations. He inspected to determine that the work did not exceed the building permit, to verify the information on the permit (commercial, residential, business) and to check that building code requirements were satisfied. He answered affirmatively when asked whether he would cite an owner for a use violation he found while he was on the premises to inspect for work without a permit.
Defendants rely on and the trial court cited Dudenheffer v. City of New Orleans, 482 So.2d 175 (La.App. 4th Cir.1986). At issue in Dudenheffer was the use of property as a wholesale seafood business in a Non-Urban District, where only a retail business was permitted. Mr. Dudenheffer claimed that the City was put on notice of his wholesale business when he filed written applications with the Department to upgrade his electrical service. The applications requested additional circuits for a welding machine and a refrigerated truck and an additional meter for an ice machine. A Department building inspector testified that zoning was routinely checked when applications for increased electrical service were made. The trial court granted an injunction prohibiting Mr. Dudenheffer from operating his business. This Court reversed, concluding that the suit to enjoin was barred by the two year prescriptive period of La.R.S. 9:5625.
In this case the trial court relied on Du-denheffer in its reasons for judgment:
In Dudenheffer v. City of New Orleans, 482 So.2d 175 (La.App. 4th Cir.1986), the Court held that written ^applications to the Department of Safety and Permits coupled with the visible and obvious nature of the questionable use, and the fact that zoning was routinely checked in connection with all such applications and permits, con *478 stituted actual knowledge and written notice of the use violation sufficient to commence the running of prescription under La.R.S. 9:5625.
The Court finds that the City of New Orleans received the required notice of the apparent use violation occurring at 705-709 Burgundy Street not later than October 31,1989, the date Mr. Johnny Odom, a senior building inspector for the Dept, of Safety and Permits, City of New Orleans, inspected the site in connection with the application for permit applied for on October 26, 1993 [incorrect year-1989][3] and issued October 27, 1993 [incorrect year-1989]. Suit was filed by the City of New Orleans on November 15, 1991, over two (2) years from the date the City received the required notice.
The trial court correctly concluded that prescription had accrued and the units of St. Peter Guest House at 705-709 Burgundy St. acquired and shall enjoy legal non-conforming status.
We are satisfied that the defendants proved that the City had actual written notice of the violation prior to October 31,1989. The defendants filed an application for a permit to the Department and the Vieux Carre Commission on October 26, 1989 and the building permit was issued on October 27, 1989. Mr. Odom was at St. Peter House on October 31, 1989 to make an inspection which included a check for zoning violations. He knew the roof covered three buddings with possible different owners and required three separate permits. However, he did not stop the contractor or further investigate. Prescription had accrued and the City’s petition for an injunction | gwas barred when it was filed on November 15, 1991.
The judgment is affirmed.

AFFIRMED.

. Robert Shirer apparently was never served. He filed no exception or other pleading. He is not included in the judgment.

. The inspector’s report (dated 1/2/89) was in answer to Kovach’s December 12, 1989 letter to the City. The report’s correct date is 1/2/90. Although the letter drafted from the report was also erroneously dated Januaiy 3, 1989, the correct date is January 3, 1990. This error was corrected in the table of contents listing the documents.

. The year of 1993 is an obvious error. The application and permit were issued in 1989.